Robert SNELLING, Plaintiff,

v.

O. K. SERVICE GARAGE, INC.,
Defendant.

Courtland HULETT, Plaintiff,

v.

O. K. SERVICE GARAGE, INC.,
Defendant.

Nos. 2015, 2016.

United States District Court,
E. D. Kentucky,
Lexington Division.

April 16, 1970.

Weldon Shouse, Lexington, Ky., for plaintiffs.

Moloney & Moloney, for Richard P. Moloney, Lexington, Ky., for defendant.

## MEMORANDUM

SWINFORD, District Judge.

The separately instituted cases of Hulett v. O. K. Service Garage, Inc. and Snelling v. O. K. Service Garage, Inc. were consolidated for purposes of trial on October 29, 1969. The plaintiffs, Courtland Hulett and Robert Snelling seek back wages, overtime, liquidated damages and attorney's fees pursuant to section 16(b) of the Fair Labor Standards Act of 1938 as amended. Both plaintiffs and defendant have moved for a summary judgment.

The defendant's principal source of income is derived from towing charges, although it does operate an automobile repair shop as an adjunct to its towing service. Wrecked, abandoned and impounded automobiles and trucks are towed by the defendant at the request of private parties or the local police. In addition to a garage operated by the defendant at 565 West Main Street, it maintains a storage lot on Manchester Street where the towed vehicles are kept until claimed or otherwise disposed of.

Courtland Hulett was employed by the defendant, O. K. Service Garage, Inc., between July 1, 1966, and October 1, 1969. During this period his hourly wage never exceeded $1.00 and he never received overtime pay for work in excess of forty hours per week. It was Hulett's job to act as daytime watchman for the above mentioned lot. In conjunction with guarding the lot, Hulett helped unload the wreckers and occasionally assisted the wrecker operators in towing cumbersome tractor trailers which had met with some mishap on the highways.

Robert Snelling was employed by the defendant from April 20, 1967, until January 20, 1969. Snelling worked six days a week, 12½ hours a day, and was compensated at a rate of $50.00 per week between April 20, 1967, and June 1, 1967, thereafter he received $60.00 per week. Snelling was night watchman at the Manchester Street lot where he also released vehicles to their owners. Many of the vehicles stored at the lot were out of state passenger cars and freight carriers.

Snelling contends that he should recover $6,548.49 for wages and overtime owed plus an equal amount as liquidated damages and a reasonable sum for attorney's fees, while Hulett demands a judgment in the amount of $2,464.19 for wages and overtime plus an equal sum as liquidated damages and a reasonable amount for attorney's fees. These figures were calculated in accordance with sections 6 and 7 of the Fair Labor Standards Act which assures employees engaged in commerce a minimum wage of $1.25 per hour for 1966 and $1.40 per hour for 1967, plus time and one half for overtime.

The determinative law in this case is found in sections 6 (minimum wage provision), 7 (maximum hour provision) and 13 (exemptions) of the Fair Labor

Standards Act. Section 6 reads as follows:

"Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages of the following rates:"

Section 7 sets forth similar requirements for applicability:

"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce, or in the production of goods for commerce or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one half times the regular rate at which he is employed."

Plaintiffs contend that their employment engaged them in commerce as stipulated by the Act. In support of this contention plaintiffs argue that frequently the vehicles held at the Manchester Street lot were licensed out of state and were a part of interstate commerce. Plaintiffs further contend that by keeping surveillance over these vehicles and releasing them to the correct owners they were in some way facilitating the flow of commerce on the federal and interstate highways. Section 779.-115 of Interpretative Bulletin, part 779, The Fair Labor Standards Act as Applied to Retailers of Goods and Services states that the Act may apply to watchmen and guards:

"Watchmen or guards employed by retail businesses who protect the warehouses, workshops or store premises where goods moving in interstate or foreign commerce are kept or where goods are produced for such commerce, are covered under the Act."

It would appear that if the plaintiffs' activities did in fact affect commerce they would be covered by sections 6 and 7 of the Act. The two basic requirements of those provisions are stated in the alternative:

1) The employee must be engaged in commerce or in the production of goods for commerce;

or

2) The employee must be employed by an enterprise engaged in commerce or in the production of goods for commerce.

Prior to the 1961 amendment to the Act each employee's coverage was dependent upon whether his activities were in commerce. The 1961 amendment provides coverage for all employees of an enterprise which is engaged in commerce or the production of goods for commerce. This guarantees a minimum wage to the employee whose duties in no way affect commerce, but who is employed by an enterprise which is engaged in commerce. The application of the Act was substantially broadened by the 1961 amendment, however, many businesses still remain exempt under the section 13 disqualifications.

If one of the section 13 exemptions apply, then the entire enterprise is exempt and it makes little difference whether an individual employee within that enterprise is himself engaged in activities affecting commerce. The gravamen of the instant case is whether the defendant qualifies for an exemption under section 13. Plaintiffs' brief notes that the Department of Labor, in April of 1968 decided the defendant's business was covered by the Act. This, of course, bolsters the plaintiffs' case, but is in no way determinative, and cannot raise more than an inference, or at best a presumption in favor of the application of the Act.

The only exemption of the Act which could be claimed by the defendant would be the retail or service establishment exclusion specified in section 13(a) (2).

To qualify for this exemption an establishment must satisfy two criteria:

1) It must come within the concept of retail selling or servicing;

2) It must meet both of the tests set out in section 13(a)(2).

Section 13(a)(2) states:

"(a) The provisions of sections 6 and 7 shall not apply with respect to—(2) Any employee employed by any retail or service establishment * * *, if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, and such establishment is not in an enterprise described in section 3(s) or such establishment has an annual dollar volume of sales which is less than $250,000 * * *"

The two tests of 13(a)(2) are stated in conjunctive form and both must be met before the exemption can be claimed. An establishment seeking exemption under 13(a)(2) must show that:

1) More than 50 per cent of its total annual dollar volume of sales is derived from sale of goods or services within the state in which the establishment is located; and

2) It is not an enterprise as defined in section 3(s) (engaged in commerce or having employees engaged in commerce) or; if it is such an enterprise as described in section 3(s) that it has an annual volume of sales less than $250,000.

The defendant in this case would meet both of the tests required by section 13(a)(2). The deposition of the defendant's accountant, Jere Sullivan, taken November 20, 1969, revealed that for all practical purposes the defendant's business is confined to Fayette County, and that the defendant has never had an annual gross volume of sales exceeding $187,194.24. Substantially more than 50 per cent of the defendant's gross volume of sales are derived from sales within the state, and notwithstanding the fact that it may be an enterprise as described in section 3(s), its annual sales are less than $250,000.

Whether the defendant can rightfully claim the retail exclusion of section 13(a)(2) is, however, dependent on whether the defendant's activities come with the concept of a retail sales or service establishment. The Act states:

"A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry."

It is questionable whether the defendant's services should be recognized as retail services. Plaintiffs argue that over 80 per cent of the defendant's business is derived from wrecker service sales at the behest of governmental agencies (the Lexington and Fayette County Police), and as such should not be construed to be retail service sales. Interpretative Bulletin, part 779, The Fair Labor Standards Act as Applied to Retailers of Goods or Services, suggests at section 779.314 that the type of services contemplated by the Act are those "services rendered by establishments which are traditionally regarded as local retail service establishments such as the restaurants, hotels, barber shops, repair shops, etc." The Interpretative Bulletin also notes that the retail concept does not apply to establishments engaged in the business of dealing in transportation. Plaintiffs point out that the defendant's business is related to transportational activities and cite Crook v. Bryant, 4 Cir., 265 F.2d 541 (1959). The plaintiff in Crook v. Bryant was a night watchman and dispatcher for the defendant, Raleigh Wrecking Company. The defendant was under contract with the West Virginia Turnpike to remove wrecked and disabled vehicles from the highway. Although the wrecking service constituted only a small part of the defendant's

business the Court concluded the plaintiff night watchman was engaged in commerce to the extent he aided in keeping the highways free from obstacles, and that the Fair Labor Standards Act did apply.

The typical retail transaction is one involving consumer goods; goods which are frequently acquired for family and personal use. However, Congress intended the retail business exemption to extend, to some degree, beyond the normal consumer goods transaction. There is no exact test as to where to draw the line and applicability of the 13(a) (2) exemption is dependent on the fact situation at hand. See Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966) where Mr. Justice Harlan's opinion discusses at length the concept of "retail transaction".

 It is my opinion that O. K. Service Garage, Inc. cannot avail itself of the 13(a) (2) retail establishment exemption. Obviously it does not offer services which would frequently be sought by family members or private parties. The purpose of the retail exemption is to exclude from coverage certain traditionally local retail or service establishments. The services of the defendant, although available to the public are primarily sought by governmental agencies. It cannot be said the defendant offers a retail service within the common understanding of the word "retail". It is also the opinion of the court that the plaintiffs were engaged in commerce so as to come within the coverage of sections 6 and 7 of the Act. The principal activity of the defendant is to remove disabled and obstructive vehicles from the highways. The duties of the plaintiffs were to guard certain of these vehicles which had been temporarily withdrawn from the channels of commerce, and by performing such duties plaintiffs were themselves engaged in commerce.

 Left for determination is whether the plaintiffs are entitled to liq-

uidated damages as provided for in section 16 of the Act. This is a fact question and must be decided according to the reasonableness of the defendant's decision not to pay minimum and overtime compensation. If the defendant in good faith reasonably believed the Act did not apply to his employees then liquidated damages should be refused. The liquidated damage provision of the Act provides a mechanism whereby plaintiffs can be compensated for the withholding of a minimum wage which may have resulted in intangible damages concomitant with substandard living situations. Theoretically liquidated damages are compensatory, but whatever label is attached to such an award it cannot be gainsaid that it is a severe sanction. Prior to the Portal-to-Portal Act of 1947, 29 U.S.C. section 260, liquidated damages were deemed to be mandatory in all minimum and overtime compensation cases. Missel v. Overnight Motor Transp. Co., 4 Cir., 126 F.2d 98, affirmed 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). It became apparent, however, that such an onerous rule created wholly unexpected liabilities which threatened employers with financial ruin and encouraged champertous suits involving employees who hoped to acquire a windfall. Accordingly Congress enacted the Portal-to-Portal Act of 1947 which authorized courts not to award liquidated damages where it appeared the employer had acted in good faith. Liquidated damages should only be granted where an oppressive employer, well knowing it has no defense to the application of the Fair Labor Standards Act, stubbornly refuses to comply with it. The facts of this case are not so clear cut that the defendant could not sincerely believe he was exempt. There is no doubt the plaintiffs' employment engaged them in commerce as defined by the Act, but such a conclusion requires an intimate knowledge of the history of the commerce clause and recent case authority which a businessman cannot be expected to know. Consequently, this court holds that liquidated damages are

inappropriate and is confirmed by Kelly v. Ballard, D.C., 298 F.Supp. 1301 (1969); Martinez v. Phillips Petroleum Co., D.C., 283 F.Supp. 514 (1968); Van Dyke v. Bluefield Gas Co., 4 Cir., 210 F. 2d 620 (1954); Neal v. Braughton, D.C., 111 F.Supp. 775 (1953); and Ispass v. Pyramid Motor Freight Corp., D.C., 78 F.Supp. 475 (1948).

 Where judgment is entered for the plaintiff in an action to recover minimum and overtime wages it is incumbent upon the court to fix an award of fees for the plaintiff's attorney. The nature of the action, and the substandard financial status of the aggrieved party compel compensation for legal expenses.