**D. Hood BOWMAN, et al.**

v.

**HARFORD COUNTY, Maryland, et al.**

**Civ. No. S 87–1511.**

United States District Court,
D. Maryland.

April 25, 1988.

John E. Kelly and Jean I. Betz, Bel Air, Md., for plaintiffs.

Max D. Miller, Co. Atty., and Victor K. Butanis, Deputy Co. Atty., for Harford County, Bel Air, Md., for defendants.

## MEMORANDUM

SMALKIN, District Judge.

This case is currently before the Court on the parties' cross-motions for summary judgment as to the remaining issues in the case. (The Court previously narrowed the issues as originally presented, by dismiss-

ing certain of the claims and defendants, and by granting summary judgment with respect to others.) Counsel for the parties have agreed between themselves (*see* letters dated February 26, 1988) that it is undisputed that the plaintiffs are due overtime payments totalling at least $7,772.40 under the Fair Labor Standards Act (FLSA) in respect of certain longevity payments that had not previously been taken into account in the calculation of their overtime pay.

■ The remaining issue is whether a second longevity entitlement, alleged to have been created by Harford County Council Bill No. 86–32, should also be taken into account in figuring plaintiffs' entitlement to overtime for FLSA purposes. The parties have briefed this issue, which is entirely one of state law.*

■ With regard to the threshold question of whether a charter county may attack the validity of its own legislative acts, plaintiffs attempt to distinguish this case from *Maryland Classified Employees Association, Inc. v. Anderson*, 281 Md. 496, 380 A.2d 1032 (1977). In *Anderson*, the Court of Appeals of Maryland permitted such an attack for several reasons. The issue involved therein was one of substantial public importance; there was an absence of public local law on the topic; there was a possibility of future fiscal and budgetary problems if the issue was not addressed; and to address the issue would not cause a substantial disruption of bureaucratic functions. 281 Md. at 506, 380 A.2d at 1037. Plaintiffs argue that, in contrast to *Anderson*, "this case merely addresses whether longevity payments totalling $19,500.00 (of a Sheriff's Department budget in excess of Seven Million Dollars), are due to thirteen deputy sheriffs." (Paper No. 24, at 2–3). Although

the dollar amount involved in this case is not monumental, the primary issue involved—whether, contrary to its charter, a county council may enact measures increasing budgetary limits without the recommendation of, and indeed over the objection of, its county executive—is an issue of substantial public importance. There is no public local law on this issue. Moreover, to permit a county council to increase a budgetary item over the limit set by the county executive would set a precedent that could cause "an increase in taxes or give rise to fiscal and budgetary problems affecting third parties," just as was the case in *Anderson*. 281 Md. at 506, 380 A.2d at 1037. Also, this challenge will not seriously disrupt the bureaucratic process; it will clarify the respective authorities of the council and the executive for future reference. Finally, and oddly enough, the nature of the question presented here is strikingly similar to that addressed on the merits in *Anderson*. Thus, this Court will address the question on the merits, even though to do so allows a municipality to question its own legislative acts.

■ The Court agrees entirely with the defendants' position that Council Bill No. 86–32, as amended, and as enacted by the Council over the veto of the County Executive, is void, because it violates the Harford County Charter. The Court finds that, under the Charter, the role of the Council is limited to decreasing or deleting, rather than increasing, budgetary recommendations made by the County Executive, whether in the form of an original current expense budget under §§ 506 and 512 of the Charter, or as a supplementary or emergency appropriation under §§ 517 and 518 of the Charter. The Charter, taken as a whole, does not give the Council the

---

* There is an identical suit pending in the Circuit Court for Harford County, which would seem a more appropriate forum for resolution of this state-law issue, but this Court is compelled by the Supreme Court's position on parallel state/federal litigation, *see Colorado River, Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 *reh. denied*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976), to reach the merits of the question,

notwithstanding the fact that it appears more sensible to litigate the state law issue in the state court system. This Court has considered certifying the issue to the Court of Appeals of Maryland, but in view of the small monetary amount involved, this approach makes no sense from the standpoint of costs and counsel fees that would be incurred, not to mention delay. Therefore, the Court will proceed to address the state law issue.

power to increase a budgetary item or to create a new or novel expense item on its own motion, as occurred here by the Council's action in amending Bill No. 86–32 to create a second longevity payment for the plaintiffs. This amendment, which was not recommended by the County Executive, caused him to veto the measure, but his veto was subsequently overridden. Although it is true that only § 512 of the Charter relating to Council action on an original budget specifically limits the Council's role to decreasing or deleting budgetary items, the language of §§ 517 and 518 on supplementary and emergency appropriations essentially does the same thing, by calling for such appropriations to be made by the Council only "upon the recommendation of the County Executive." The County Executive, of course, made no such recommendation respecting the second longevity payment inserted by Council amendment in Bill No. 86–32. In the judgment of this Court, the Council could no more increase a recommended supplementary or emergency appropriation under §§ 517 and 518 than it could an original requested budgetary item under § 512(a). The entire scheme of the Charter is to have the Executive control the ceiling on expenditures, whether original, supplementary, or emergency, but to allow the Council to establish the floor, and to determine how much distance there should be between the two. This scheme would be violated if the Council could, as it did in the bill here in question, originate an expenditure item without the recommendation of, and, indeed over the objection of, the County Executive. Because it is obvious that a Council bill violative of the Charter is *ultra vires* and therefore void under Maryland law, *Maryland Classified Employees Association, Inc. v. Anderson*, 281 Md. at 511–13, 380 A.2d at 1040–41, this Court finds that the defendants are entitled to summary judgment with respect to the so-called second longevity payment created in Council Bill No. 86–32, as amended.

█ The Court therefore concludes that the plaintiffs are entitled to judgment, against the defendants, in the amount of $7,772.40 and no more, in respect of unpaid overtime under the FLSA.

The next question is whether the Court ought, in the exercise of its discretion, to award liquidated double damages under the FLSA. The defendants contend, and the plaintiffs do not dispute (*see* Mr. Kelly's letter to the Court of March 31, 1988 (Paper No. 20)) that this issue is to be decided by the Court, rather than by a jury. The Court sees no need to take evidence *viva voce* on the matter, because the parties have presented a full record to the Court in conjunction with their cross-motions.

█ The statute provides that an employer violating the FLSA "shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Despite the seemingly mandatory nature of this provision, liquidated damages under the FLSA are for the Court's discretion, the exercise of which is guided by 29 U.S.C. § 260, providing that, if "the employer shows to the satisfaction of the court that the act or omission giving rise to [underpayment] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." It is, of course, the employer's burden to show both good faith and reasonable grounds for believing that it was not in violation of the FLSA. *See, e.g., Burnley v. Short*, 730 F.2d 136, 140 (4th Cir.1984); *Roland Electrical Co. v. Black*, 163 F.2d 417, 427 (4th Cir.1947), *cert. denied*, 333 U.S. 854, 68 S.Ct. 729, 92 L.Ed. 1135 (1948).

█ In this case, the defendants contend that their good faith and reasonable belief is made out by the language of the relevant County Council bills, all of which stated that the longevity payment was "paid as a separate payment and does not increase the established rates of pay." The defendants proffer, and the plaintiffs do not disagree, that all concerned parties

knew of this language and were satisfied with it, including representatives of the plaintiffs. Furthermore, the discussion at the public hearing on the original longevity enactment, Bill No. 84–15, was to the effect that the longevity payment was intended as a "bonus which would be a cash payment which will not accrue and will not be added to the pay structure; ..." (Paper No. 19, Exhibit B, p. 1). There is no contrary legislative intention shown in the debate on that bill or that on Bill No. 86–32. Thus, this Court has no difficulty in concluding that the defendants acted in both objective and subjective good faith in not including the longevity payments in the FLSA overtime rates, given the way in which the entire mechanism of the Harford County Government, and the plaintiffs, viewed the longevity payment at its inception and during its continuation. In this Court's judgment, this same fact also shows that the defendants had reasonable grounds for their actions, in that the County's miscalculation arose from an innocent error, rather than from any intent to violate the law or from any plainly mistaken interpretation of law. It is also relevant to this determination that the defendant County had practically no experience withthe FLSA, which did not even apply to it, as a municipality, until *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) was overruled on February 19, 1985 (*after* the first longevity payment was created) in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). (Indeed, Congress even postponed the effective date of *Garcia* until April 15, 1986. *See* Paper No. 12.) Thus, in the Court's discretion, it determines that both objective and subjective good faith, as well as reasonable grounds to believe non-violation of the FLSA, have been satisfactorily proved by the defendants, and that what occurred here was merely a technical or inadvertent error in calculating overtime pay. Having made this finding, the Court would be justified in awarding no liquidated damages at all. *See Burnley*, 730 F.2d at 139–140; *see also Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir.1986). The Court may, however, still exercise its discretion in regard to liquidated damages, by awarding any amount not to exceed the amount specified in section 216. 29 U.S.C. § 260. For the reasons stated *ante*, the Court will not award the full amount of liquidated damages specified in section 216. However, to compensate plaintiffs for the loss of the use of their money, the Court, in its sound discretion, hereby awards liquidated damages in an amount equal to prejudgment interest, at the rate of 10 per cent per annum, from the date defendant Harford County became subject to the FLSA (April 15, 1986). (Of course, pursuant to section 260, that amount may not exceed the amount specified in section 216, which in this case has been determined to be $7,772.40.)

Finally, the question remains as to attorney's fees. Plaintiffs do not specify the precise amount of attorney's fees sought, but, rather, have submitted an "affidavit in support of attorney's fees," asserting that the following number of hours were spent on the case:

| | |
|---|---|
| John E. Kelly | 44.6 hours |
| Jean L. Betz | 18.8 hours |
| Law Clerks | 53.55 hours |

The affidavit goes on to state that Mr. Kelly (who is known to the Court to have been a former County Attorney for Harford County) has been admitted to practice for 17 years and Ms. Betz for three years. The only hourly rate claimed is $110 "for hours worked in this matter," which is stated to be "a fair and reasonable amount in light of the prevailing rates within the legal community."

Pursuant to current case law relating to the calculation of attorney's fees, *see, e.g., Daly v. Hill*, 790 F.2d 1071 (4th Cir.1986), this Court has determined that a reasonable amount of attorney time spent on this case should not exceed a total of 30 hours. The issues were not complex, the pleadings and other motions have not been lengthy, and the facts have been essentially undisputed. In fact, many defense motions were granted as unopposed. There were no oral hearings. The Court is of the opinion that an additional 15 hours may be

allowed for law clerk time. (The Court is somewhat hampered in its efforts to make its calculations by the fact that the plaintiffs' affidavit was not accompanied by any documentation giving a detailed description of the work performed. *Cf.* Local Rule 23A, D.Md.; *Daly v. Hill*, 790 F.2d at 1079.) The Court is further of the opinion that reasonable hourly rates for work of the scope involved in this case are $100.00 for Mr. Kelly, $75.00 for Ms. Betz, and $37.50 for law clerks. Because the affidavit claims that Ms. Betz worked about one-half as many hours as Mr. Kelly, the Court will apply the $100.00 rate to 20 hours, and the $75.00 rate to the remaining 10 allowed hours. The Court will apply a rate of $37.50 to the 15 hours of law clerk time. The Court has considered the additional factors that enter into the attorney fee lodestar calculus, such as lost opportunity costs, unpopularity of the case, and all others such factors relevant under *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 88 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978), but it finds that none of them warrants an adjustment in the lodestar fee as figured above. Reducing these calculations to numbers, the Court finds that the plaintiffs are entitled to an attorney's fee in the amount of $3,312.50.

For the reasons stated, an order and judgment will be entered separately, entering judgment for the plaintiffs, against defendant Harford County, Maryland, in the amount of $7,772.40, with costs and with liquidated damages in the form of interest at 10 per cent from April 15, 1986 until paid, and with attorney's fees in the amount of $3,312.50. Judgment will be entered in favor of the other remaining defendants against the plaintiffs, but without costs.

## ORDER AND JUDGMENT

For the reasons stated in the foregoing Memorandum, IT IS, this 25th day of April, 1988, by the Court, ORDERED and ADJUDGED:

1. That plaintiffs' motion for summary judgment BE, and the same hereby IS, GRANTED;

2. That judgment BE, and the same hereby IS, entered in favor of the plaintiffs, against the defendant Harford County, Maryland, in the amount of $7,772.40, with costs, and with liquidated damages equal to simple interest at 10% (figured on $7,772.40) from April 15, 1986 until paid, said liquidated damages not to exceed $7,772.40;

3. That plaintiffs' counsel be awarded attorney's fees in the amount of $3,312.50;

4. That judgment BE, and the same hereby IS, entered in favor of the other remaining defendants, against the plaintiffs, without costs; and

5. That the Clerk of Court mail copies of the foregoing Memorandum and of this Order and Judgment to counsel for the parties.