Edward W. DALHEIM, et al., Plaintiffs,

v.

KDFW–TV, Defendant.

Civ. A. No. CA3–85–0894–D.

United States District Court,
N.D. Texas,
Dallas Division.

May 4, 1989.

Yona Rozen of Hicks, Gillespie, James, Rozen & Preston, P.C., Dallas, Tex., for plaintiffs.

David M. Ellis and Michael P. Maslanka of Clark, West, Keller, Butler & Ellis, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

Plaintiffs, who prevailed in their action under the Fair Labor Standards Act ("FLSA") to recover unpaid overtime compensation, move the court for an award of liquidated damages or prejudgment interest. Following an evidentiary hearing, the court finds and concludes [1] that defendant, KDFW–TV ("KDFW"), has demonstrated that the acts and omissions giving rise to its violation of the FLSA were undertaken in good faith and upon reasonable grounds. The court determines, in its sound discretion, that liquidated damages should not be awarded and declines to award prejudgment interest.

### I.

The procedural history and background facts of this action are reported, *see Dalheim v. KDFW–TV*, 706 F.Supp. 493, 495–500 (N.D.Tex.1988), and the court recounts here only the portions of its prior decision that are necessary to understand today's opinion.

Plaintiffs are present and former general assignment reporters, producers, directors, and assignment editors at a network affiliate television station, KDFW. They brought suit against KDFW to recover unpaid overtime compensation. KDFW took the position at trial that plaintiffs were exempt from FLSA coverage as professional, administrative, or executive employees. Plaintiffs contended they were not exempt and that KDFW's violations of the Act were "willful."

Following a bench trial, the court found in favor of plaintiffs on their claim for overtime compensation and held against plaintiffs on their assertion that KDFW acted willfully. The court noted that the

---

[1]. This memorandum opinion and order constitutes the court's findings of fact and conclusions of law. *See* Fed.R.Civ.P. 52(a).

action "present[ed] questions of first impression," 706 F.Supp. at 495, that "resolution of the FLSA coverage question [was] particularly knotty," *id.*, that the administrative agency interpretive guides were issued prior to "the considerable technical advances that [had] taken place in the television industry and in broadcast journalism," *id.* at 496, and that, to an extent, the court was required to "navigate uncharted waters without the assistance of a jurisprudential sextant," *id.* The court held that the determinations whether general assignment reporters and producers were exempt employees were "close" ones that ultimately turned upon the evidence adduced by KDFW at trial. *Id.* at 503 & 507 n. 16.

The court rejected plaintiffs' contention that KDFW had acted willfully. Applying the Supreme Court's holding in *McLaughlin v. Richland Shoe Co.*, 486 U.S. ——, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988), that "willful" refers to conduct that is voluntary, deliberate, and intentional, the court found that the novel nature of the questions presented, the closeness of two of the issues, and KDFW's reliance upon a favorable 1981 Department of Labor ("DOL") investigation—in which the DOL approved KDFW's position regarding the exempt status of these employees—warranted the finding that KDFW had not acted willfully. 706 F.Supp. at 511.

Plaintiffs now move for liquidated damages pursuant to 29 U.S.C. § 216(b). They correctly assert that the court's prior finding that KDFW did not act willfully does not preclude an award of liquidated damages because the standards for determining the two issues are not identical.

Plaintiffs argue that KDFW cannot prove that it acted in good faith and upon reasonable grounds. They correctly contend that, even if KDFW can satisfy both prongs, the court may nevertheless award liquidated damages in the exercise of its discretion. Plaintiffs concede the court's prior findings for declining to hold that KDFW acted willfully, but argue that the questions concerning directors and assignment editors were not close, that a 1984 DOL investigation found violations of the FLSA, and that KDFW simply took a calculated risk in failing to compensate plaintiffs for overtime. They also point to the delay between the time they should have been paid overtime and the date they will ultimately be compensated and the lack of availability of prejudgment interest,[2] and ask the court to award liquidated damages in at least this amount to make them whole.

## II.

The FLSA provides that an employer who violates the requirement to pay overtime compensation "shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).[3] Although the language of § 216(b) is mandatory, Congress thereafter added a provision that grants the district court the sound discretion not to award liquidated damages if the employer shows (1) "that the act or omission giving rise to such action was in good faith" and (2) "that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260.[4] *Barcel-*

2. As the court points out *infra* at note 16, and as plaintiffs concede, prejudgment interest is unavailable in a case brought pursuant to 29 U.S.C. § 216.

3. 29 U.S.C. § 216(b) provides, in pertinent part:
 Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

4. 29 U.S.C. § 260:

In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. A. § 201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

*lona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 468 (5th Cir.1979) (minimum wage case); *see Hays v. Republic Steel Corp.,* 531 F.2d 1307, 1309 n. 3 (5th Cir.1976) (age discrimination case) (employer must show failure was in good faith and predicated upon such reasonable grounds that it would be unfair to impose liquidated damages). The purpose for the amendment "was to mitigate the harshness of the then-strict liability offense of violating Section 216." *LeCompte v. Chrysler Credit Corp.,* 780 F.2d 1260, 1263 (5th Cir.1986).

 The burden of proving that the two-prong test has been met is upon the employer, 29 U.S.C. § 260 ("if the employer shows to the satisfaction of the Court"); *Thomas v. State of Louisiana,* 348 F.Supp. 792, 796 (W.D.La.1972), who has "the plain and substantial burden" of persuading the court by proof that its failure to obey the statute was both in good faith and was predicated upon such reasonable grounds that it would be unfair to impose more than a compensatory [5] verdict. *Barcellona,* 597 F.2d at 468. The defense requires plain and substantial evidence of at least an honest intention to ascertain what the FLSA requires and to comply with it. *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir.1987) (citing *Williams v. Tri–County Growers, Inc.,* 747 F.2d 121, 129 (3d Cir.1984); *Barcellona,* 597 F.2d at 468–69). The burden is a difficult one to meet; "double damages are the norm, single damages the exception." *Id.* (quoting *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir.1986)). Even if the employer carries its burden, the court retains the discretion to award liquidated damages. *Hayes v. McIntosh,* 604 F.Supp. 10, 21 (N.D.Ind.1984); *Thomas,* 348 F.Supp. at 796.

The court first sets forth the factual findings pertinent to its decision, then discusses its reasons for finding that KDFW has met the good faith and reasonable grounds test of § 260, and finally articulates its reasons for exercising its sound discretion in favor of denying liquidated damages. *See Reed v. Murphy,* 232 F.2d 668, 678 (5th Cir.) (although § 260 gives trial judge widest latitude, it imposes duty on judge to make reasoned, articulate judgment), *cert. denied,* 352 U.S. 831, 77 S.Ct. 45, 1 L.Ed.2d 51 (1956).

### A.

KDFW presented two witnesses at the liquidated damages evidentiary hearing: William Keller, Esq. ("Keller"), KDFW's labor law attorney for in excess of 20 years, and I.W. (Bill) Baker ("Baker"), KDFW's vice president and general manager since 1983.

Keller's testimony can be divided into three general areas: the legal advice that his firm gave to KDFW concerning whether the employees in question were exempt under the FLSA; [6] KDFW's efforts to comply with the FLSA; and the negotiating positions of the employees' collective bargaining units that indicate the union viewed the employees as being exempt. From his testimony the court finds the following.[7]

In 1981 the DOL conducted an investigation of KDFW to determine if its overtime compensation practices comported with the FLSA. The DOL file regarding that investigation was inexplicably empty when examined in 1984, but the file jacket contained the penciled notation "no violations."

---

5. The circuit court's characterization of liquidated damages as "more than compensatory" probably should not be understood as deeming such damages to be punitive in nature. Liquidated damages are not considered to be a penalty but are intended as compensation. *Thompson v. Sawyer,* 678 F.2d 257, 281 (D.C.Cir.1982) (Equal Pay Act case); *Brock v. Wackenhut Corp.,* 662 F.Supp. 1482, 1487–88 (S.D.N.Y.1987) (minimum wage and overtime case). *But see Kimball v. Goodyear Tire & Rubber Co.,* 504 F.Supp. 544, 549 (E.D.Tex.1980) (court would not award liquidated damages because employ-

er should not be *penalized* for its error); *Lane v. M's Pub, Inc.,* 435 F.Supp. 917, 920 (D.Neb.1977) (award of liquidated damages is severe *sanction*) (citing *Snelling v. O.K. Service Garage, Inc.,* 311 F.Supp. 842, 846 (E.D.Ky.1970)).

6. The legal advice that Keller and other firm lawyers provided to KDFW regarding FLSA coverage can be probative of KDFW's good faith and reasonable grounds. *See infra* § II(B).

7. Keller's testimony was entirely credible.

At the conclusion of the 1981 investigation, the DOL orally advised KDFW that the investigation had given KDFW a "clean bill of health." Because the KDFW management representative who dealt with the DOL in 1981 is now deceased, KDFW could offer no direct testimony as to the scope of the 1981 investigation.

KDFW considered KDFW general assignment reporters, producers, directors, and assignment editors to be exempt within the meaning of the FLSA; accordingly, they were not paid overtime compensation. These employees were, however, permitted "comp" time. That is, if an employee worked in excess of a certain number of hours daily or weekly, the employee could, with approval, take off other time with full pay. The "comp" time could be "banked" and taken outside the work week in which it was earned. With management approval, "comp" time could be aggregated with available vacation time. Holiday work was credited as two days for banking purposes. Baker testified that, in one extreme case, a KDFW reporter who worked numerous extra hours during the session of the Texas legislature was able to use banked "comp" time to take a lengthy overseas vacation.

In 1983 the DOL certified a collective bargaining unit—known as AFTRA[8] 1— that consisted of on-air reporters and anchors at KDFW. These employees had not previously been organized, and the union's contract was to be the first with KDFW. Collective bargaining commenced in February 1984. Following approximately 40 negotiating sessions, the parties reached agreement in 1985.

In March 1984 the AFTRA 2 bargaining unit was formed,[9] consisting of producers, directors, assignment editors, and associate producers. KDFW and AFTRA 2 reached

an agreement in June 1987, and the AFTRA 1 and 2 agreements were "globed."

Of several issues raised in the AFTRA 1 negotiations, the union demanded that the "comp" time policy be made part of the collective bargaining agreement, that "comp" time be banked at a ratio of 1½ to 1, rather than the 1 to 1 ratio then extant (except in the case of the 2 to 1 ratio for holidays), and that "comp" time banking rights be mandatory rather than subject to KDFW's approval. KDFW's negotiators advised the union that AFTRA 1 employees must be viewed as exempt under the FLSA in order to bank "comp" time outside the work week in which earned. The union's proposal treated the unit members as exempt.

The union advised that if management did not accept the "comp" time proposal, the union would instigate a wage and hour investigation by the DOL in order to challenge KDFW's position on the exempt status of the employees. The union filed such a complaint and the DOL Wage and Hour Division of the Employment Standards Administration assigned compliance officer Clyde Peterson ("Peterson") to the investigation ("1984 investigation").

KDFW management and its legal counsel attempted to find out information about the 1981 investigation because KDFW desired to comply with the law. Baker and Keller asked that Doug Barnes ("Barnes"), KDFW's comptroller who dealt with the DOL in 1981, apprise them of the status of the investigation. Keller had not been involved in the investigation and Baker had not been general manager at the time. Barnes, who died prior to trial, advised that the investigation was broad-based, included the types of employees covered by the AFTRA 1 and 2 units, and had found no violations. KDFW also met with officer

---

**8.** American Federation of Television and Radio Artists—Screen Actors Guild, AFL–CIO, Dallas–Ft. Worth Local.

**9.** KDFW challenged the right of these employees to form a collective bargaining unit on the ground that they were supervisors. The NLRB rejected this contention and directed that an election be conducted. AFTRA won the election and was certified as the exclusive bargaining

representative of the unit. To preserve its objection to the NLRB decision, KDFW refused to bargain, thereby triggering an unfair labor practice finding and NLRB order holding KDFW guilty of violating the National Labor Relations Act. The NLRB moved the Fifth Circuit to enforce the order, which the circuit court did. *See NLRB v. KDFW–TV, Inc., Div. of Times Mirror Corp.,* 790 F.2d 1273 (5th Cir.1986).

Peterson throughout his investigation and attempted to cooperate in all respects. KDFW desired to be "right" on the question of FLSA coverage and to comply with the law, whether or not interpreted favorably to KDFW's position.

Keller's law firm also devoted attention to the question over a several-month period. At least four firm labor lawyers researched the pertinent issues and, finding nothing directly on point, concluded the issues were ones of first impression. KDFW requested its legal counsel's opinion, asked officer Peterson for his rationale for resolving the question, and requested that the union provide any available theories.

Keller's firm opined that all four categories of employees were exempt from FLSA coverage and thus not entitled to overtime compensation. Officer Peterson was unable to offer a definitive legal test. At first he drew a distinction between reporters who appeared on-air and those that did not. This was not a standard that Peterson drew from the pertinent law or regulations, but rather one he had fashioned himself. KDFW could not effectively distinguish its reporters on this basis because all its reporters appeared on-air.

The Wage and Hour Division investigation continued throughout the summer of 1984. In a meeting at the end of August, officer Peterson informed KDFW and its legal counsel that general assignment reporters would be considered exempt but "beat"[10] reporters would be deemed non-exempt. He requested that KDFW select one or two "beat" reporters who would be considered non-exempt. KDFW responded that it could not do so because all its reporters were general assignment reporters.

In a September 1984 meeting with Peterson, KDFW expressed the desire to resolve the wage-hour investigation with a definitive standard by which to regulate the employer's compensation practices. KDFW's lawyers suggested that KDFW submit a letter that would set out such a standard and be signed by Peterson on behalf of the Wage and Hour Division. Peterson seemed to think the idea was a good one and approved the language of a draft letter.

The parties met again in October 1984, at which time KDFW presented a modified form of the letter. Peterson informed KDFW that he lacked the authority to sign it. KDFW then suggested that it submit a letter setting forth its own views; Peterson could agree with the content of the letter without signing it. Keller drafted a December 10, 1984 letter (D.Ex. 24, tab 11) from KDFW to Peterson. The letter stated that it "reflect[ed] the resolution of the present Wage–Hour investigation" and "correctly state[ed] our mutual resolution of the questions relating to exempt or non-exempt status." KDFW stated that, "[a]s agreed, KDFW–TV will conduct its operations within the ... provisions of this agreement and, in response to any inquiries, will so advise any interested employee of the contents of this resolution."

The letter approach broke down, however, because Peterson concluded that five reporters, one producer, and one director were non-exempt. Peterson did not find that any assignment editors were non-exempt. When KDFW challenged these conclusions, Peterson responded that he felt he had to come up with names of at least some non-exempt employees. Peterson declined to disclose to KDFW his rationale for selecting the seven individuals in question. KDFW then submitted to Peterson a December 21, 1984 letter (D.Ex. 24, tab 5) that attempted to rebut Peterson's tentative findings. Peterson said no assignment editors were found to be non-exempt because they were *clearly* exempt. According to Keller, Peterson had no basis for selecting the five reporters found to be non-exempt—he simply designated five.

In February 1985, KDFW met with Peterson and his supervisor, Curtis L. Poer ("Poer"), the Area Director of the Wage and Hour Division. Poer suggested that, if KDFW paid back wages for the seven employees on officer Peterson's list, this

---

**10.** A "beat" reporter, under Peterson's definition, was like a newspaper reporter who cover-

ed only one subject (*e.g.*, City Hall or the courthouse).

would conclude the investigation. Keller thought the position to be untenable from KDFW's viewpoint. The payments would set a precedent and there was no rational basis for finding the employees in question to be non-exempt and other categorically alike newsroom employees to be exempt.

Director Poer acknowledged at the meeting that the DOL was probably wrong in designating one reporter as non-exempt and that the decision regarding another reporter was questionable. He stated that he could understand KDFW's position and its reasons for litigating an adverse determination. He said he felt the DOL's case was weak and he would recommend that it not litigate the case. In an April 17, 1985 letter, in fact, Poer stated that his office had reviewed the case with "the Dallas office of The Solicitor of Labor and they did not feel the case was suitable for litigation." (D.Ex. 24, tab 2).

Baker's testimony at the liquidated damages hearing coincided with Keller's to the extent that the two had coterminous personal knowledge. Baker confirmed that KDFW was acutely interested in complying with the law and had made every effort to do so. Baker insisted that the station obey the FLSA and believed, in good faith, that KDFW's position was correct. He also concluded that KDFW's position was based upon reasonable grounds.

### B.

The court first determines whether KDFW has proven that it acted in good faith and upon reasonable grounds in declining to pay overtime compensation to the plaintiffs.

11. The employer's good faith is measured subjectively. *Brock v. Shirk*, 833 F.2d 1326, 1330 (9th Cir.1987) (per curiam), *vacated on other grounds sub nom. Shirk v. McLaughlin*, — U.S. —, 109 S.Ct. 38, 102 L.Ed.2d 18 (1988); *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir.1984); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 464 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (citing *Addison v. Huron Stevedoring Corp.*, 204 F.2d 88, 93 (2d Cir.), *cert. denied*, 346 U.S. 877, 74 S.Ct. 120, 98 L.Ed. 384 (1953)); *see*

–1–

To prove that it acted with subjective [11] good faith, KDFW was obligated to demonstrate that it had an honest intention to ascertain what the FLSA required and to act in accordance with it. *Brock v. Shirk*, 833 F.2d 1326, 1330 (9th Cir.1987) (per curiam) (citing *EEOC v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985); 29 C.F.R. 790.15), *vacated on other grounds sub nom. Shirk v. McLaughlin*, — U.S. —, 109 S.Ct. 38, 102 L.Ed.2d 18 (1988); *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir.1982). Good faith requires some duty to investigate potential liability under the FLSA. An employer cannot claim good faith who blindly operates without making an investigation as to its responsibilities under the law. *Barcellona*, 597 F.2d at 469.

The determination that KDFW acted in good faith is facilely resolved in KDFW's favor. KDFW thought it was acting in compliance with the FLSA. When the question of FLSA coverage arose in 1984, KDFW was interpreting the Act in conformity with a favorable 1981 DOL investigation. Rather than rely exclusively upon the results of the prior DOL inquiry, however, KDFW management honestly sought to ascertain the requirements of the FLSA and to comply with them. KDFW requested the opinion of labor counsel, who devoted extensive research to the question. Counsel advised KDFW that the issues were ones of first impression and opined that KDFW was in compliance with the FLSA.

–2–

The court turns next to the question whether KDFW's failure to pay overtime compensation was objectively [12] reasonable.

*Brock v. El Paso Natural Gas Co.*, 826 F.2d 369, 371 (5th Cir.1987) (referring to good faith test as subjective).

12. *Shirk*, 833 F.2d at 1330 (reasonable grounds is objective component of test); *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir.1982) ("The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior"); *Laffey*, 567 F.2d at 464 (reasonable

■ This determination presents no difficulty in the case of reporters and producers. KDFW's position that its reporters were exempt as artistic professionals and its producers exempt as administrative employees was legally supportable by a reasonable interpretation of the apposite agency regulations. *See* 706 F.Supp. at 504–05 (reporters) & 506–07 (producers). Both issues were close, *id.* at 503 & 507 n. 16, and were resolved against KDFW as a result of its failure to carry its evidentiary burden at trial, *id.* at 503–04 & 506.

■ The reasonableness of KDFW's posture concerning directors and assignment editors is not as easily resolved because the trial evidence more clearly showed these employees—especially assignment editors—to be non-exempt. Nevertheless, for the following reasons, the court finds that KDFW possessed objectively reasonable grounds for deciding not to pay these employees overtime compensation.

First, the 1981 DOL investigation gave KDFW a "clean bill of health," finding "no violations." The investigation included all categories of employees involved in the present case. KDFW reasonably continued its compensation policy in light of the outcome of the investigation. *See Retail Store Employees Union, Local 400 v. Drug Fair–Community Drug Co.,* 307 F.Supp. 473, 480 (D.D.C.1969) (no liquidated damages where Wage and Hour Administrator, though aware of employer's practices, took no action to require overtime compensation); *Giannini v. Standard Oil Co.,* 130 F.Supp. 740, 754 (N.D. Ind.1955) (no liquidated damages where regional Wage and Hour Division office classified employees as exempt who were later found to be entitled to overtime); *Knudsen v. Lee & Simmons, Inc.,* 89 F.Supp. 400, 406 (S.D.N.Y.1949) (no liquidated damages where Wage and Hour investigator found no violation after inquiry into employer's payroll).

Second, KDFW obtained and acted upon the advice of experienced labor law counsel, who opined that KDFW's conduct conformed to the FLSA and regulations in these areas of first impression. KDFW had reasonable grounds for acting based upon the advice of counsel. *See Van Dyke v. Bluefield Gas Co.,* 210 F.2d 620, 622 (4th Cir.) (finding no abuse of discretion in trial court's denial of liquidated damages where employer acted on advice of counsel), *cert. denied,* 347 U.S. 1014, 74 S.Ct. 870, 98 L.Ed. 1137 (1954); *Foremost Dairies, Inc. v. Ivey,* 204 F.2d 186, 190 (5th Cir.1953) (same); *Kimball v. Goodyear Tire & Rubber Co.,* 504 F.Supp. 544, 549 (E.D.Tex. 1980) (denying liquidated damages where employer acted on advice of counsel); *but see Gustafson v. Fred Wolferman, Inc.,* 73 F.Supp. 186, 197 (W.D.Mo.1947) (advice and opinion of attorney not itself sufficient to establish "good faith" of employer).

Third, the issues presented were ones of first impression that involved an interpretation of agency regulations promulgated in the infancy of broadcast journalism. The court did not resolve the uncertainty in the law until its November 1988 opinion, issued well after KDFW adopted its compensation policy and plaintiffs filed suit. KDFW's conduct was objectively reasonable in light of the uncertainty in the law. *See Wyatt v. Holtville Alfalfa Mills,* 106 F.Supp. 624, 633 (S.D.Cal.1952) (industry uncertainty as to applicability of FLSA, inherent confusion in language of exemptions claimed to be applicable, and employer's failure to pay as result of uncertainty, warranted court to decline to award liquidated damages), *remanded on other grounds,* 230 F.2d 398 (9th Cir.1955); *cf. Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 466 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (sex discrimination case) (to assist the employer's defense, legal uncertainty must pervade and markedly influence the employer's belief).

Fourth, KDFW acted upon objectively reasonable grounds in light of the 1984 DOL investigation. In this inquiry the DOL fully vindicated KDFW's position regarding assignment editors, concluding

grounds test is measured by objective standard); *see also El Paso Natural Gas,* 826 F.2d at 371

(referring to reasonable grounds test as objective).

they were clearly exempt from FLSA coverage. The DOL also determined that all but one of the directors were exempt. Officer Peterson did find that one director was non-exempt, but the rationale for his doing so was sufficiently suspect[13] that the finding did not deprive KDFW of reasonably objective grounds for treating all directors as exempt. As the court's fact findings reflect, KDFW employed more than one newscast director and all directors performed the same work. 706 F.Supp. at 499–500. The DOL's inexplicable line-drawing between similar employees appears to be more of a patchwork compromise than a reasoned decision.[14]

## C.

The court's determination that KDFW acted in good faith and upon reasonable grounds does not end the matter. The court still retains the discretion to award liquidated damages. In this case the determination whether to do so divides into two questions: whether the facts generally warrant the award of such damages and whether plaintiffs' inability to recover prejudgment interest justifies an award.

### –1–

The court's review of the reported cases reveals only two in which courts have awarded liquidated damages notwithstanding the findings that the employer acted in good faith and upon reasonable grounds. In these instances, discussed *infra*, the courts awarded partial damages in order to compensate workers for the loss of use of unpaid compensation. Otherwise, the reported decisions typically do not focus upon the desirability of compensating the plaintiff (which would be appropriate given the compensatory nature of such damages), but evaluate instead the fairness of awarding such damages given the conduct of the particular employer. The reported cases appear almost inexorably to deny damages once the court finds the employer has proven it acted in good faith and upon reasonable grounds.

Like the present case, district courts[15] have declined to award such damages where the Wage and Hour Administration was aware of the employer's practices and took no action, *Drug Fair–Community Drug,* 307 F.Supp. at 480, the Department of Labor conducted an investigation that revealed no violation and the employer relied in good faith on that determination, *Miller v. Kansas Power & Light Co.,* 585 F.Supp. 1509, 1515 (D.Kan.1984) (Equal Pay Act case), the regional office of the Wage and Hour Division classified employees as exempt who were later found to be entitled to overtime, *Giannini,* 130 F.Supp. at 754, and the Wage and Hour investigator found no violation after inquiring into the employer's payroll, *Knudsen,* 89 F.Supp. at 406. Courts have also exercised their discretion to deny such damages where the application of the FLSA to the employer's workers was a factual one, *Kimball,* 504 F.Supp. at 549, where the employer had sought and acted upon the advice of counsel, *see* discussion *supra,* where an expert employed by the union opined that there was no coverage, *Foremost Dairies,* 204 F.2d at 190, and where the employer exhibited a "manifest desire ... to comply with the law," *Scarmato v. Northern California Thrift Co.,* 184 F.Supp. 420, 423 (N.D.Cal.1960).

**13.** The court's analysis of the case, *see* 706 F.Supp. at 506, 508 & 510, does not differentiate among individual directors. Officer Peterson determined that one director was non-exempt, but did not explain why other similarly-situated directors were exempt.

**14.** In light of the trial evidence, the court questions how the DOL could find some reporters to be non-exempt but find all assignment editors "clearly" to be exempt.

**15.** In the court's opinion on the FLSA coverage questions, it lamented the lack of guidance offered by other cases because their determinations were necessarily fact-bound. 706 F.Supp. at 495 & n. 3. This statement must be tempered by the Fifth Circuit's recognition in *El Paso Natural Gas Co.,* 826 F.2d at 374, that "although each ... case will have facts unique unto itself, the guidance available from previously decided cases is important." Even absent this instruction, the decisions of other courts can assist the court in exercising its discretion even if unable to guide the court's interpretation of FLSA coverage questions.

■ The court concludes in its discretion that the facts do not generally warrant the award of liquidated damages. KDFW earnestly attempted to comply with the law. It sought appropriate legal advice from attorneys competent in the wage-hour field. It intended to comply with, rather than to circumvent, the law. The KDFW overtime compensation policy was fully vindicated in 1981. Although, shortly before the present suit was filed, the DOL reached a partially contrary conclusion, the 1984 investigation is so questionable—and KDFW's response to it so forthright—as to negate the adverse aspects of the investigation. The questions presented by plaintiffs' case were ones of first impression; the relevant interpretive regulations were promulgated in the infancy of broadcast journalism.

–2–

■ Plaintiffs also request liquidated damages to compensate them for the interest [16] they would have earned had they been paid the overtime compensation when it was due. In their brief, plaintiffs do not cite any authority for such an approach. The court's own research, however, has located two reported cases in which trial courts have exercised their discretion in the manner that plaintiffs request.

In *Bowman v. Harford County*, 684 F.Supp. 416, 420 (D.Md.1988), the district court found that the employer had satisfied both prongs of § 260. Nevertheless, it awarded liquidated damages in an amount equivalent to prejudgment interest "to compensate plaintiffs for the loss of use of their money." In *Crago v. Rockwell Manufacturing Co.*, 301 F.Supp. 743, 748 (W.D. Pa.1969), the district court exercised its sound discretion similarly, awarding "partial liquidated damages ... representing plaintiff's loss of use of the overtime compensation due him."

This court has difficulty following such a course in the present case. The Fifth Circuit has held that prejudgment interest is not recoverable in an action such as this.

*See supra* note 16. Were this court to award liquidated damages as the functional equivalent of prejudgment interest, it would do so to circumvent a contrary circuit court holding. Alternatively, most courts have not adopted such an approach, and have instead denied liquidated damages altogether when the employer meets the requirements of § 260 and there are persuasive reasons for exercising discretion in favor of no award. Given the novelty of the questions presented, KDFW's efforts to ascertain and to comply with the applicable law, and the results of the DOL's 1981 and 1984 investigations, the court holds in its sound discretion that liquidated damages should not be awarded in a sum equivalent to prejudgment interest.

III.

The court has decided the merits of plaintiffs' case. In accordance with the court's opinion, 706 F.Supp. at 511, the parties have stipulated to plaintiffs' damages and attorney's fees. The court now denies plaintiffs' motion for liquidated damages. The parties shall submit a form of judgment for entry by the court.

SO ORDERED.

16. Plaintiffs recognize that such interest is unavailable in this circuit. *See Peters v. City of Shreveport*, 818 F.2d 1148, 1169 (5th Cir.1987), *cert. dismissed*, — U.S. —, 108 S.Ct. 1101, 99 L.Ed.2d 264 (1988) (sex discrimination case) (and cases cited). They request an award of prejudgment interest, as such, only to preserve the point.