**William E. BROCK, Secretary of Labor, United States Department of Labor, Plaintiff–Appellant,**

v.

**Joann SHIRK, individually and doing business as Oregon Meat Cutting School; Frank B. Shirk, individually and doing business as Oregon Meat Cutting School, Defendants–Appellees.**

No. 86–4121.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1987.

Decided Dec. 8, 1987.

**1328**

Claire Brady White, U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellant.

Edward N. Fadeley, Fadeley & Fadeley, Eugene, Or., for defendants-appellees.

Before WRIGHT, WALLACE and PREGERSON, Circuit Judges.

PER CURIAM:

This is a case about willfulness, good faith and the Fair Labor Standards Act ("FLSA"). The Secretary of Labor appeals from the relief, inadequate in his view, that was granted in litigation against violators of FLSA.

The trial judge found that employers, then before the court as repeat offenders under FLSA, "knew or had reason to know that [their] employees were working overtime hours without compensation." He also ruled that the employers' acts and omissions were not "willful," and were "in good faith." He applied a two-year statute of limitation, denied liquidated damages, and refused to issue a prospective injunction. Applying controlling authority, we must reverse and remand.

## I. FACTS

The dispositive facts are not contested. Appellees Frank and Joann Shirk operate the Oregon Meat Cutting School and two associated retail outlets. In an Oregon state court action in 1980, they were found guilty of violating the FLSA by failing to pay an employee time and one-half for overtime hours. After judgment was entered in that case, the Shirks installed a time clock in their Springfield work place. They told their employees that they were on "salary," but required them to punch the time clock for pay purposes. The Shirks posted, and had their employees sign, written rules emphasizing that no overtime would be authorized. Employees actually worked more than their time cards showed.[1]

Employees complained to the Department of Labor. Following an investigation of the Shirks' enterprise, the Secretary of Labor filed suit against the Shirks in federal district court, alleging failure to pay overtime, failure to keep and maintain proper work records in violation, and use of child labor, in violation of 29 U.S.C. §§ 207(a), 211(c) and 212(c).

The Shirks alleged as affirmative defenses: (1) they acted at all times in good faith with reasonable grounds for believing they were not violating the FLSA; (2) they were ignorant of any child labor at their enterprise; (3) they were ignorant of any overtime violations, having relied on the employees' incorrectly punched time cards; and (4) the employees' actions (including submission of time cards they knew to be incorrect and acceptance of the Shirks' no overtime policy) estopped this action under the FLSA.

The district court absolved the Shirks of the child labor charges. It found, however, that they knew or had reason to know that their employees were covered by the FLSA and were in fact working more than 40

1. The district court found it difficult to credit the Shirks' assertion that they seriously intended that their employees stop working at the end of their shifts when important tasks (e.g., cleaning the store and packing and refrigerating perishable meat) remained to be done. Findings of fact and evidence in the record clearly indicate that despite the no overtime "rule," the Shirks expected their employees to complete the tasks assigned them even if that required that employees actually work more than forty hours per week.

hours per week. It concluded that the Shirks violated the overtime and reporting provisions of the FLSA, but denied the Secretary of Labor's request for three years back pay, for liquidated damages, and for injunctive relief. The Secretary of Labor appealed.

## ANALYSIS

### II. "WILLFUL" VIOLATION OF SECTION 255

The Secretary challenges first the trial court's determination that the employees' claims were limited by a two-year statute of limitation. The Portal–to–Portal Act, 29 U.S.C. §§ 251 et seq., provides that:

> Any action ... to enforce any cause of action for ... unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act ... may be commenced within two years after the cause of action accrued, ... except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued....

29 U.S.C. § 255(a) ("section 255"). At issue here is the trial court's finding that the Shirks' acts or omissions were not "willful" for purposes of that provision.

The meaning of the term "willful" in section 255 is well settled in this Circuit. In *Marshall v. Union Pacific Motor Freight Co.*, 650 F.2d 1085, 1092 (9th Cir. 1981), this court explicitly adopted:

> the following rule for determining willfulness under section 255: A violation is willful when the employer was, or should have been, cognizant of an appreciable possibility that the employees involved were covered by the statutory provisions.

*See also EEOC v. First Citizens Bank of Billings*, 758 F.2d 397 (9th Cir.) (applying the *Union Pacific* standard), *cert. denied*, 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985). We apply that standard here.[2]

■ We review *de novo* interpretation of the statutory authorization of damages. *First Citizens, supra*, at 401. *See also United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (application of law to undisputed facts reviewed *de novo*), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed. 2d 46 (1984). We try the matter anew, as if it had not been heard before and as if no decision had been previously rendered. *Exner v. FBI*, 612 F.2d 1202, 1209 (9th Cir. 1980).

■ The trial court noted the applicability of *First Citizens*, but ruled that despite the Shirks' knowledge that their employees were covered by the statutory provisions, and their knowledge or reason to know that their employees were working overtime without compensation, the Shirks did not necessarily willfully violate the FLSA. We conclude otherwise. On these facts, for purposes of Section 255, the Shirks necessarily, as a matter of law, "willfully" violated the FLSA. The three-year statute of limitation applies.

### III. LIQUIDATED DAMAGES OR PRE-JUDGMENT INTEREST

The Secretary appeals also the district court's denial of liquidated damages. Under 29 U.S.C. § 216(b), employers who violate the overtime compensation provisions of the FLSA are liable to their employees both for unpaid overtime compensation and for liquidated damages in an amount equal to the back pay liability:

> Any employer who violates the provisions of section 206 or section 207 of this Title shall be liable to the employee or employees affected in the amount of their unpaid ... wages ... and in an additional equal amount as liquidated damages.

Section 216(b) is mandatory: violators "shall be liable" for liquidated damages. *First Citizens*, 758 F.2d at 403; 29 U.S.C. § 216(b).

---

**2.** We recognize that other circuits have questioned that definition of willful, and that the Supreme Court will likely resolve the existing conflict among the circuits. *See Brock v. Rich-* land Shoe, 799 F.2d 80 (3d Cir.1986), *cert. granted*, —— U.S. ——, 108 S.Ct. 63, 98 L.Ed.2d 27 (1987). *First Citizens* is still the law of this circuit. It controls here.

**1330**

That section is modified, however, by section 260, providing that the court may, in its sound discretion, refuse to award liquidated damages if the employer demonstrates that it acted reasonably and in good faith:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act ... the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this Title.

Under section 260, the district court may deny liquidated damages

> *if, and only if,* the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act.... [B]efore the district court's discretion may be invoked, the employer has the plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.

*Marshall v. Brunner*, 668 F.2d 748, 753 (3rd Cir.1982) (emphasis in original) (citations and footnote omitted).

■ The district court's determination that the Shirks satisfied their burden of demonstrating that they acted in good faith and on reasonable grounds requires the application of legal principles to established facts. We thus review the district court's determination de novo. *McConney*, 728 F.2d at 1202.

■ To meet their statutory burden, the Shirks were required to demonstrate both that "the act or omission giving rise to [the violation] was in good faith *and* that [they] had reasonable grounds for believing that [their] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260 (emphasis added). This test has both subjective and objective components.

■ To satisfy the subjective "good faith" component, the Shirks were obligated to prove that they had "an honest intention to ascertain what [the FLSA] requires and to act in accordance with it." *First Citizens*, 758 F.2d at 403; *see also* 29 C.F. R. 790.15 (" 'Good faith' requires that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry."). It is evident from a review of the district court's findings that the Shirks failed to demonstrate their good faith in this case.

The district court found that the Shirks were repeat offenders who knew both that their employees were covered by the FLSA and that they were working overtime without compensation. These findings belie the Shirks' claim that they believed in good faith that their failure to pay overtime did not constitute a violation of the FLSA. Their awareness that their employees were working without compensation precludes a finding that they had no knowledge of circumstances which ought to have put them on inquiry. Their knowledge that their employees were covered by the FLSA demonstrates that they lacked an honest intention to find out what the FLSA requires and to act in accordance with its provisions. We are persuaded, therefore, that the district court failed to apply the correct legal standard in making its section 260 determination of "good faith."

■ To satisfy the objective component of the statutory test, the Shirks were required to prove that "[their] failure to obey the statute was ... predicated upon such reasonable grounds that it would be unfair to impose upon [them] more than a compensatory verdict." *Brunner*, 668 F.2d at 753. The district court did not indicate that it considered, much less applied, any such standard when making its section 260 determination.

The district court found that the Shirks knew their employees were working overtime but that they "honestly believed" they could avoid liability under the FLSA by telling their employees that overtime would not be "authorized." The district court then based its denial of liquidated damages

on this finding of "honest belief." Even assuming that the Shirks subjectively believed, in good faith, that they were not required to compensate their employees for "unauthorized" overtime, they failed utterly to satisfy their burden of proving that this belief was reasonable. The facts in this case simply cannot support a finding that the Shirks had objectively reasonable grounds for believing no violation was taking place.

The record before us permits only one proper conclusion: that the Shirks, as a matter of law, failed to satisfy their burden of demonstrating that they reasonably and in good faith believed that they were not violating the FLSA. Consequently, the district court had no discretion to mitigate the Shirks' statutory liability for liquidated damages. *Id.* We reverse the district court's decision on this issue and remand with instructions to award liquidated damages in accordance with the requirements of section 216(b).[3]

## IV. PROSPECTIVE INJUNCTION

█ Finally, the Secretary appeals the district court's denial of injunctive relief. We review that decision for abuse of discretion or for application of an erroneous legal principle. *Brock v. Big Bear Market # 3*, 825 F.2d 1381, 1383 (9th Cir.1987).

The district court based its decision to deny injunctive relief in this case largely on its finding that the defendants honestly believed they were not violating the FLSA. The court explained:

> [The Shirks'] violation of FLSA was not willful and, despite the violations, I find they were acting in good faith. I find no reason to believe they are not presently complying with the Act or that they will fail to comply with it in the future. Therefore, I do not find it necessary to issue a prospective injunction against them at this time.

Though the question of whether the trial court thereby abused its discretion is a close one, examination of our cases indicates that the district court failed to give adequate weight to relevant factors in reaching its decision.

We have emphasized that prospective injunctions under FLSA serve a remedial not a punitive purpose:

> The injunction subjects the defendants to no penalty, to no hardship. It requires the defendants to do what the Act requires anyway—to comply with the law.... [T]he manifest difficulty of the Government's inspecting, investigating, and litigating every complaint of a violation weighs heavily in favor of enforcement by injunction—*after* the court has found an unquestionable violation of the Act.

*Marshall v. Chala Enterprises, Inc.*, 645 F.2d 799, 804 (9th Cir.1981) (*Chala*) (emphasis in original) (quoting *Mitchell v. Pidcock*, 299 F.2d 281, 287 (5th Cir.1962)). We noted that "[i]n exercising its discretion, the district court must give substantial weight to the fact that the Secretary seeks to vindicate a public, not a private, right." *Id.* Prospective injunctions place the cost of noncompliance on the employer and are essential to effectuate Congress's policy of abolishing substandard labor conditions by preventing recurring violations. *Id.; see also Big Bear*, 825 F.2d at 1383. Thus, though the district court has discretion to deny injunctive relief in appropriate cases, this discretion is limited by consideration of the importance of prospective relief as a means of ensuring compliance with the provisions of the FLSA. *Chala*, 645 F.2d at 804.

█ In determining whether to award injunctive relief against an employer, the district judge should consider evidence of current compliance, any record of past violations, and the likelihood of future compliance. *See Big Bear*, 825 F.2d at 1383; *Wirtz v. Atlas Manufacturing Co.,*

---

3. At oral argument, both counsel queried whether the employees were entitled to liquidated damages, prejudgment interest, or both. We have determined that liquidated damages are mandated by statute. Only one such "make whole" remedy is proper here. *See Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir.1986); *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1102 (11th Cir.1987); *Hodgson v. Wheaton Glass Co.*, 446 F.2d 527, 534 (3d Cir.1971).

377 F.2d 112 (5th Cir.1967) (*Wirtz*). Current compliance alone is not a sufficient ground for denying injunctive relief. *Big Bear*, 825 F.2d at 1383; *Chala*, 645 F.2d at 804.

■ The most important factor the district court must weigh in deciding whether to grant such relief is the likelihood that the employer will comply with the Act in the future. *Big Bear*, 825 F.2d at 1383 ("a district court must weigh the finding of violations against factors that indicate a reasonable likelihood that the violations will not recur"); *Wirtz*, 377 F.2d at 116.

In determining likelihood of future compliance, the court should consider the employer's previous conduct and the dependability of its promises for future compliance. *Big Bear*, 825 F.2d at 1383; *Wirtz*, 377 F.2d at 116. Our review of the record convinces us that the district court did not adequately consider these factors in reaching its decision.

First, the court failed to give adequate weight to the fact that the Shirks have been guilty of violating the FLSA on at least one prior occasion by failing to pay their employees overtime compensation.[4] We stated in *Big Bear* that previous violations or bad faith are factors "weighing heavily in favor of granting a prospective injunction." 825 F.2d at 1383. The district court observed that acts of past noncompliance are "relevant" to a determination of whether injunctive relief is appropriate. It did not, however, mention the Shirks' past violation in reaching its decision.

■ Second, the court failed to consider adequately the dependability of the Shirks' promise of future compliance. It stated that "the extent to which the defendant has made a promise of future compliance" is a "relevant factor" in determining whether to grant injunctive relief. This misstates the relevant test. Mere assurances of future compliance do not provide a sufficient basis for denying an injunction. *Chala*, 645 F.2d at 804. Instead, the inquiry must focus on the *dependability* of the promise

made. *Big Bear*, 825 F.2d at 1383; *Wirtz*, 377 F.2d at 116.

■ The judge's findings and other evidence in the record raise doubt as to the reliability of the Shirks' promise. They were repeat offenders of the Act. The district court found that, in the case at bar, they had violated the recordkeeping and overtime provisions of the Act. It found that the Shirks had knowledge that their employees were working overtime without compensation, but that they believed they could avoid liability for overtime under the FLSA by instructing their employees that overtime would not be authorized. Mr. Shirk testified in his deposition that he continued the practice of having employees sign a form that stated that no overtime would be authorized. Yet, the district court specifically found it "hard to believe" that the Shirks "seriously prefer[red]" that their employees not work overtime given the amount and nature of the work they had to do.

It thus appears from the record that the Shirks may continue the same practices that led to their liability in this case: instructing their employees not to work overtime under circumstances in which it is likely that their employees will continue to work overtime rather than leave important tasks undone. We cannot find in the district court's analysis adequate consideration of the factors weighing in favor of injunctive relief in this case. We therefore remand with instructions to reexamine this issue in light of our holdings in *Big Bear* and *Chala*.

## V.  CONCLUSION

We REVERSE and REMAND. The parties will bear their own costs on this appeal.

---

**4.** According to the Pretrial Order contained in the Excerpt of Record, an Oregon court entered

a judgment against the Shirks in 1980 for violating the overtime provisions of the Act.