**Stanley HORAN, et al., Plaintiffs,**

v.

**KING COUNTY, WASHINGTON, DIVISION OF EMERGENCY MEDICAL SERVICES, Defendant.**

**No. C89–248Z.**

United States District Court,
W.D. Washington,
at Seattle.

March 20, 1990.

Thomas A. Woodley, Gregory K. McGillivary, Mulholland & Hickey, Washington, D.C., James H. Webster, Mark E. Brennan, Webster, Mrak & Blumberg, Seattle, Wash., for plaintiffs.

Kay Slonim, Deputy Pros. Atty., Norm Maleng, King County Pros. Atty., Seattle, Wash., for defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND OTHER RULINGS

ZILLY, District Judge.

THIS MATTER comes before the Court on plaintiffs' motion for partial summary judgment and defendant's cross-motion for summary judgment. Having considered all materials filed in support of and in opposition to these motions, the Court GRANTS plaintiffs' motion for partial summary judgment (docket no. 30). The Court also GRANTS IN PART and DENIES IN PART defendant's motion for summary judgment (docket no. 36), and GRANTS the parties sixty (60) days to explore a possible settlement regarding damages. The parties are to provide the Court with a written status report within sixty (60) days of this Order concerning possible settlement.

## BACKGROUND

The dispositive facts are uncontested. The plaintiffs are civilian, state-certified paramedics, currently or formerly employed by the defendant, Emergency Medical Services Division (EMSD) of King County. These individuals have all undergone the intensive one-year training course required by Washington State for paramedic certification. This training course empha-sizes emergency medicine skills specified in WAC 248–15–060, and consists of extensive classroom and field training, including an apprenticeship with certified paramedics.

The defendant, EMSD, is a public agency employer with the duty of providing emergency medical services throughout South King County. EMSD operates a "two-tiered" response system for such emergencies. The first tier of the system is the police and firefighter/emergency medical technicians; the second tier of the system consists of four paramedic units.

When an emergency call initially comes in to a "9–1–1" dispatcher, firefighters, who are also emergency medical technicians (EMTs), are immediately dispatched to the emergency. Known as "first responders", these firefighter/EMTs are not only trained in fire protection, fire suppression, and extraction techniques, but also are capable of administering basic life support such as CPR. If the dispatcher determines that any injuries are potentially life-threatening, the dispatcher will also send a team of EMSD paramedics to the scene. The EMSD paramedics are capable of administering more advanced life support and medical care than the firefighter/EMTs. Thus, the EMSD paramedics, as the second tier of the emergency response team, provide backup emergency care.

Under EMSD's standard operating procedures, EMSD paramedics may not actually fight fires or extricate people who are in emergency situations. Merritt Dec. (docket no. 31), Ex. 7; Woodley Dec. (docket no. 32 (Call Dep.)), at 48–56. King County's EMSD paramedics are subject to discipline if they engage in these type of activities while on duty. *See* Merritt Dec. (docket no. 31), Exs. 8, 9. Their job is strictly limited to administering advanced emergency patient care and treatment, and providing emergency transportation as required.

Since April of 1986, the length of the King County paramedics' workweek has been regulated by the Federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* Under the FLSA, the standard workweek is forty (40) hours, and any employee

who works more than 40 hours in a week is entitled to time-and-a-half overtime pay. 29 U.S.C. § 207(a)(1).[1] However, an exemption to the 40–hour workweek (known as the section 7(k) exemption) was created for fire protection and law enforcement employees employed by a public agency. 29 U.S.C. § 207(k). Under the section 7(k) exemption, fire protection employees are entitled to overtime pay only after working a fifty-three (53) hour workweek, while law enforcement personnel are entitled to overtime after working a forty-three (43) hour workweek. *See* 29 C.F.R. 553.230.

In 1985, King County learned that the FLSA would apply to state and local government employees by April of 1986. In anticipation of the FLSA's application to its work force, King County began to study the impact of the FLSA on its employees. The County's analysis included the following: (1) review of the Department of Labor (DOL)'s regulations[2] interpreting the section 7(k) exemption; (2) examination of the relevant DOL letter rulings, (3) attendance at FLSA-related seminars, and (4) consultations with the King County Prosecuting Attorney's Office and DOL representatives. As a result of its analysis, King County determined that its paramedics were "rescue service employees" whose "services are substantially related to firefighting or law enforcement activities". 29 C.F.R. § 553.215(a). Consequently, King County concluded that its paramedics could be treated as fire protection employees and thus were covered by the section 7(k) exemption entitling them to overtime pay only after a 53–hour workweek.

After King County determined the status of its paramedics for FLSA purposes, the union representing the King County paramedics, Local 2595 of the National Association of Firefighters, filed a complaint with the Department of Labor. The union's complaint alleged that King County's paramedics did not fit within the section 7(k) exemption and that the County's paramedics should therefore be paid overtime based on a 40–hour workweek. The DOL investigated the matter and orally confirmed King County's conclusion that its paramedics did qualify as "rescue service personnel" and thus were properly included within the section 7(k) exemption from the 40–hour workweek. *No written findings were issued. See* Blackstone Aff. (docket no. 39), at 6.

On February 23, 1989, thirty-six current and former King County paramedics filed suit against King County, seeking a declaratory judgment that they are not fire protection employees (and therefore must be paid overtime based on a 40–hour workweek), and a judgment for unpaid compensation owed to them, as well as liquidated damages, interest, reasonable attorney's fees, and costs, pursuant to 29 U.S.C. § 216(b).

On December 28, 1989, the plaintiffs moved for summary judgment as to whether, as a matter of law, King County's EMSD paramedics are fire protection employees for FLSA overtime purposes. The plaintiffs also requested that the Court allow them a reasonable period of time to explore a possible settlement with the defendant regarding damages, should the Court grant the plaintiffs' motion.

King County filed its cross-motion for summary judgment on January 22, 1989, requesting dismissal of the plaintiffs' claims. King County argues that its paramedics are exempt from the 40–hour workweek provisions under 29 C.F.R. §§ 553.210 and 553.215, and DOL letter rulings. However, if the EMSD paramed-

---

**1.** 29 U.S.C. § 207(a)(1) provides:

   Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

**2.** The relevant regulations are 29 C.F.R. § 553.210 allowing rescue service personnel to be treated as "fire protection employees" for the section 7(k) exemption, and § 553.215 defining which "rescue service employees" qualify for the section 7(k) exemption.

ics are not found to be fire protection employees, the County moves this Court to determine, as a matter of law, that it is immune from liability based on the defenses contained in the Portal–to–Portal Pay Act, 29 U.S.C. §§ 259 and 260.

## DISCUSSION

Summary judgment is appropriate if the pleadings and supplemental material "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If a fairminded jury could return a verdict for the nonmoving party on the evidence presented, summary judgment must be denied. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor, yet the inferences to be drawn must be permitted under the governing substantive law. *Id.*

In deciding the plaintiffs' and defendant's motions for summary judgment, the Court must determine the following: (1) whether the statutory language of the FLSA section 7(k) exemption for fire protection employees is clear and unambiguous on its face; (2) if not, whether DOL's regulations interpreting section 7(k), 29 C.F.R. §§ 553.210 and 553.215, are reasonable and consistent with the FLSA's legislative purpose; and (3) if these regulations are consistent, whether, under the regulations, King County's EMSD paramedics may be treated as fire protection employees for FLSA purposes and thus are within the section 7(k) exemption to the 40–hour workweek provisions. If the Court finds that the plaintiffs are not within the section 7(k) exemption, as King County believes they are, then the Court must also decide whether King County is liable to the plaintiffs for unpaid overtime compensation, liquidated damages, court costs, and attorney's fees.

The Court concludes that King County's EMSD paramedics are not fire protection or law enforcement employees for FLSA overtime purposes and that King County is consequently liable to the plaintiffs for their unpaid overtime compensation, court costs, and reasonable attorney's fees. However, the Court also concludes that King County did not willfully or in bad faith violate the FLSA and thus has limited immunity under the Portal–to–Portal Pay Act, 29 U.S.C. § 260. Accordingly, this Court, in its discretion, refuses to award plaintiffs liquidated damages.

### A. FLSA STATUS OF KING COUNTY'S PARAMEDICS.

#### 1. *Statutory Language of Section 7(k) of the FLSA.*

The dispute in this case centers on the interpretation of the provision of the FLSA that provides overtime protection to employees who are required to work long hours. Section 207(a)(1) of the FLSA sets forth the general requirement that most employees must be paid overtime compensation for hours worked in excess of 40 hours per week. Originally, the FLSA did not apply to public sector employees. However, in 1974, Congress amended the FLSA to extend this overtime protection to state and local government employees. S.Rep. No. 690, 93rd Cong., 2d Sess. 13 (1974), U.S.Code Cong. & Admin. News, P. 2811, attached to Plaintiffs' Memorandum (docket no. 30). Included in the 1974 amending legislation was a provision (which later became section 207(k) of the FLSA) exempting "employees in fire protection or law enforcement activities" from the 40–hour workweek if they are employed by a public agency. King County's EMSD is a public agency. The legal question is whether King County's EMSD paramedics are employees in "fire protection" or law enforcement activities.

The phrases "employee engaged in fire protection activities" or "law enforcement activities" are not defined in the statute. Plaintiffs suggest that the "plain meaning rule" should apply in this case. "If the statute is clear and unambiguous, 'that is the end of the matter, for the court, as well as the agency, must give effect to the

unambiguously expressed intent of Congress.'" *Board of Governors v. Dimension Fin. Corp.,* 474 U.S. 361, 368, 106 S.Ct. 681, 685, 88 L.Ed.2d 691, 698 (1986) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781–2782, 81 L.Ed.2d 694, 703 (1984)). When the language of a statute is clear on its face, the traditional deference courts pay to agency interpretation should not be applied to alter the clearly expressed intent of Congress. *Dimension Fin. Corp.,* 474 U.S. at 368, 106 S.Ct. at 685, 88 L.Ed.2d at 698. Similarly, considering the legislative history of a statute that is plain on its face is a "a step to be taken cautiously." *City of Edmonds v. United States Dept. of Labor,* 749 F.2d 1419, 1421 (9th Cir.1984) (quoting *Tulalip Tribes of Wash. v. FERC,* 732 F.2d 1451, 1454 (9th Cir.1984)). Plaintiffs contend that the phrase "employee engaged in fire protection activities" is clear and unambiguous on its face because it clearly refers to any activity relating to the prevention, control, or extinguishment of fires and does not include purely medical activities such as paramedic or rescue services. Therefore, plaintiffs maintain that the Court need not look behind the clear language of the FLSA to its legislative history or agency interpretation.

■ Contrary to plaintiffs' suggestion, the plain meaning rule is not an absolute bar to considering legislative history but "a flexible principle for ascertaining the intent of Congress." *Heppner v. Alyeska Pipeline Serv. Co.,* 665 F.2d 868, 870 (9th Cir. 1981). "The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect." *Watt v. Alaska,* 451 U.S. 259, 266,

101 S.Ct. 1673, 1677, 68 L.Ed.2d 80, 88 (1981). If the statutory language is clear and consistent with the congressional purpose, legislative history need not be considered unless there is something so probative of the intent of Congress as to require a reevaluation of the meaning of the statutory language. *Heppner,* 665 F.2d at 871.

Plaintiffs argue that the legislative history of section 7(k) does not support a more expansive view of the term "employee engaged in fire protection activities." Plaintiffs contend that Congress' expressed reference to particular exceptions within the FLSA precludes enlargement by implication of these exceptions. *See Addison v. Holly Hill Fruit Prods., Inc.,* 322 U.S. 607, 616–17, 64 S.Ct. 1215, 1220–21, 88 L.Ed. 1488, 1496 (1944). Thus, plaintiffs argue that because Congress specifically identifies numerous other categories of employees that are to be exempt from the 40–hour workweek provision, and because Congress does not mention paramedics or rescue service personnel in either the legislation or the committee reports accompanying the legislation, paramedics should be excluded from the section 7(k) exemption.

■ However, House floor language suggests that Congress did intend to include ambulance and rescue service personnel within the section 7(k) exemption. A colloquy between a House Member and the ranking member of the General Labor Subcommittee during floor debate on the 1974 legislation indicates that the language "employees engaged in fire protection or law enforcement activities" includes rescue service or ambulance employees as long as the employees' work is substantially related to fire protection or law enforcement activities.[3] While the remarks of a single legis-

---

3. The full text of the colloquy is as follows:
   MR. MIZELL ...
   Mr. Speaker, I would like to direct a question to the ranking member of the General Labor Subcommittee (MR. QUIE) with respect to section 6 of the conference report, "Federal and State employees."
   That section departs from the standard FLSA "hours of work" concept for public agency employees who are engaged in fire protection and law enforcement "activities." Was it the

intent of the conference committee to cover by such language employees who are engaged in the rescue-ambulance services—activities of a public agency?
   MR. QUIE. The gentleman is correct that provision, section 6(c), is intended to cover those employees directly employed by a public agency who are engaged in rescue or ambulance activities which are substantially related to fire protection or law enforcement activities. In some instances these rescue or

lator are not controlling when analyzing legislative history, *Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208, 231 (1979), in the absence of any other evidence, this portion of legislative history is probative of Congressional intent and thus should not be ignored. *See Heppner,* 665 F.2d at 871. Accordingly, the Court rules that the phrase "employees engaged in fire protection or law enforcement activities" does not, in and of itself, clearly express Congress' intent. Therefore, this Court must look beyond the language of the statutory phrase to ascertain Congressional intent.

2. *Department of Labor Regulations Interpreting the FLSA Section 7(k) Exemption.*

■ DOL has promulgated regulations interpreting section 7(k) of the FLSA. DOL has defined "any [public agency] employee ... in fire protection activities" as:

any employee (1) who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by State statute or local ordinance; (3) who has the legal authority and responsibility to engage in the prevention, control or extinguishment of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires.... *The term would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities. See Section 553.215.*

29 CFR § 553.210(a) (emphasis added). 29 CFR § 553.215(a) allows ambulance and rescue service employees of a public agency to be treated as fire protection or law enforcement employees under section 7(k) if their services are "substantially related" to firefighting or law enforcement activities.[4]

When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.... When the construction of an *administrative regulation* rather than a statute is at issue, *deference is even more clearly in order.* *Montana Power Co. v. Environmental Protection Agency,* 608 F.2d 334, 344 (9th Cir.1979) (quoting *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965)) (emphasis by *Montana Power* court). Administrative regulations have the force of law as long as they are consistent with the purposes of the legislation. *Martinez v. Marshall,* 573 F.2d 555, 559 (9th Cir.1977).

■ One of the purposes of the 1974 legislation amending the FLSA was to apply the same overtime standards to the government sector as are applied to the private sector. Yet Congress recognized the unusually long workweeks required of public safety employees and the potential impact the 40–hour workweek provisions would have on state and local government fire protection and law enforcement employees. S.Rep. No. 159, 99th Cong, 1st Sess. 5, *reprinted in* 1985 U.S.Code & Ad-

ambulance crews are a part of the fire or police department. In other cases they must be under a separate department of the same public agency, but their activities substantially include rescue and ambulance work associated with fire protection and law enforcement. In that case these employees are covered by the unique provisions of section 6(c)....
Does the Chairman of the General Labor Subcommittee (MR. DENT) concur in that understanding?
MR. DENT. That is correct.
120 Cong. Rec. 8598 (1974).

**4.** 29 C.F.R. § 553.215(a) provides:
Ambulance and rescue service employees of a public agency other than a fire protection or

law enforcement agency may be treated as employees engaged in fire protection or law enforcement activities of the type contemplated by section[ ] 7(k) ... if their services are substantially related to firefighting or law enforcement activities in that (1) the ambulance and rescue service employees have received training in the rescue of fire, crime, and accident victims or firefighters or law enforcement personnel injured in the performance of their respective, [sic] duties, and (2) the ambulance and rescue service employees are regularly dispatched to fires, crime scenes, riots, natural disasters and accidents.
29 C.F.R. § 553.12.

min.News, pp. 651, 653. Consequently, Congress established the section 7(k) overtime exemption for "those public employees who are most frequently required to work more than forty hours per week," namely "law enforcement and fire protection employees." S.Rep. No. 690, 93rd Cong., 2d Sess. 24 (1974). This language, coupled with the above House floor colloquy, is persuasive evidence that the purpose of the legislation is served by including within the section 7(k) exemption those publicly-employed ambulance and rescue service employees whose workhours are similar to those of firefighters or law enforcement personnel, and whose duties are substantially related to fire protection or law enforcement activities. The DOL regulations, 29 C.F.R. §§ 553.210 and 553.215, which include rescue service employees within the section 7(k) exemption, are consistent with the congressional purpose and must be given the force of law. *See Martinez*, 573 F.2d at 559.

### 3. 29 C.F.R. Section 553.215 Test for Exempt Ambulance and Rescue Service Employees.

■ In order to exempt its ambulance and rescue service employees from the 40-hour workweek, an employer must show that the ambulance and rescue employees' services are "substantially related" to firefighting or law enforcement activities. 29 C.F.R. § 553.215. This "substantially related" test is two-pronged. The employer must show that "(1) the ambulance and rescue service employees have received training in the rescue of fire, crime, and accident victims or firefighters or law enforcement personnel injured in the performance of their respective, [sic] duties, and (2) the ambulance and rescue service employees are regularly dispatched to fires, crime scenes, riots, natural disasters and accidents." *Id.*

DOL has interpreted this test in three letter rulings. The most important letter ruling for the purposes of this case is dated October 9, 1987. In this letter ruling, DOL wrote that the term "rescue" contained in the first prong of the test "refers to actions taken to free a victim from imminent danger or harm by the most expeditious means." DOL Administrative Letter Ruling of October 9, 1987, Fair Labor Standards Handbook, App. III at 173, 174, Thom. Pub. Group, Inc. (March 1988), attached as Ex. C to King County's Memorandum (docket no. 37). DOL construed the section 553.215 requirement that an EMT[5] be "trained to rescue" to mean:

> that the individual has knowledge of basic life-saving procedures and life-support procedures (i.e. CPR, administering oxygen, and extrication techniques). However, it is not necessary for an EMT to routinely perform any or all of these procedures in order to meet the requirements of the first test referred to above.

The DOL letter further states that EMTs need not be trained to rescue fire victims by removing them from burning buildings or other structures in order to be engaged in activities that are "substantially related" to fire protection or law enforcement.

■ King County asserts that its paramedics meet the first prong of the above test regarding training for two reasons. First, King County states that its paramedics are trained to rescue the injured. King County claims its paramedics receive training in backboarding (patient stabilization), triage (prioritizing injuries) and extrication techniques, including the use of the Lucas tool, a hydraulic tool used to dislodge crushed metal, usually employed in traffic accidents. King County paramedics also attend sessions involving exercises simulating auto/bus accidents, elevator shaft accidents, cave-ins, and mass casualty accidents. King County's Memorandum (docket no. 37), at 14. Second, King County maintains that under the relevant DOL regulations and letter rulings, its paramedics need only receive rescue *training* in order to meet the first prong of the "substantially related" test, and that actual *perform-*

---

**5.** Although the DOL letters refer to "EMTs," the term "EMTs" also includes King County paramedics because, by state law, all paramedics have EMT training and certification. *See* WAC 248–15–060.

*ance* of these rescue activities is not needed.

This argument is negated by a close reading of DOL's October 9 letter ruling. The October 9 letter ruling, on which King County heavily relies, states that EMTs need not *routinely* perform extraction duties in order to meet the first prong of the "substantially related" test. The letter does not state that EMTs need *never* perform rescues (even if trained to do so) in order to satisfy the first prong of the "substantially related" test. *See* King County's Memorandum (docket no. 37), Ex. C. In King County, rescue (including extrication) is the sole responsibility of the fire department. Under EMSD's standard operating procedures, King County paramedics may not engage in firefighting duties while on duty, Merritt Dec. (docket no. 31), Exs. 7, 8; Woodley Dec. (docket no. 32 (Call Dep.)), at 48 *et seq.*, and King County paramedics are subject to discipline if they depart from EMSD procedures. *See* Merritt Dec. (docket no. 31), Ex. 9. Since the letter ruling is aimed specifically at EMTs who will be required to perform "rescues" as defined in the October 9 letter ruling, and since King County paramedics cannot officially perform rescues as so defined, allowing King County's paramedics to be treated as "fire protection employees" would be inconsistent with DOL's October 9 letter ruling.

Moreover, King County's argument that its paramedics need only be trained to rescue in order for its paramedics' services to be "substantially related" to fire protection activities goes against the general rule concerning FLSA exemptions. Exemptions under the FLSA "are to be narrowly construed against the employer asserting them, and ought to be applied only in those circumstances which plainly and unmistakably come within their terms and spirit." *Donovan v. Bereuter's, Inc.*, 704 F.2d 1034, 1036 (8th Cir.1983). Congress' intent in passing the 40–hour workweek exemption was to exempt only those public employees whose actual work, not training, is "substantially related" to fire protection or law enforcement activities. *See* Mizell–Quie colloquy, 120 Cong. Rec. 8598 ("section 6(c), is intended to cover those employees ... who are engaged in rescue or ambulance activities which ... substantially include rescue and ambulance *work* associated with fire protection and law enforcement"; (emphasis added)). This intent is evidenced by 29 C.F.R. § 553.212, which states that employees engaged in fire protection or law enforcement activities who spend over twenty percent of their working time in "nonexempt activities" do not come within the section 7(k) exemption. Nonexempt activity is work that is not performed as incident to or in conjunction with fire protection or law enforcement activities. *See id.* While the exact percentage of fire-related calls to which the EMSD paramedics respond is unclear, it is undisputed that the EMSD paramedics spend over twenty percent of their time in activities unrelated to fire protection activities as defined in Section 553.210(a) or to law enforcement activities as defined in Section 553.211. Thus, even if the EMSD paramedics were also firefighters or sheriffs, they would not come within the section 7(k) exemption. King County argues that, notwithstanding the fact that the paramedic's nonexempt work exceeds twenty percent of their total hours worked, its paramedics are within the exemption because they are rescue service employees being treated as fire protection employees. This reasoning is difficult to reconcile with the purpose of the statute and the language of Section 553.212. The Court concludes that the first prong of the "substantially related" test for rescue service personnel who may be treated as fire protection or law enforcement employees, defined in 29 C.F.R. § 553.215 and in the October 9 DOL letter ruling, requires that rescue service personnel use, whenever the need arises, the extrication training that they must receive. As it is uncontested that King County paramedics are prohibited by EMSD from extricating people from imminent danger or harm while on duty, this Court determines that as a matter of law, King County's EMSD paramedics do not meet the first prong of the "substantially related" test set forth in 29 CFR § 553.215.

The Court also finds from the above undisputed facts that plaintiffs do not meet the second prong of section 553.215(a), requiring that they be "regularly dispatched to fires, crime scenes, riots, natural disasters and accidents." Clearly, the EMSD paramedics are not "regularly dispatched" to such incidents as fires or law enforcement emergencies. EMSD's computerized data bank indicates that of about 10,000 alarms per year, less than one-half of one percent is related to fire emergencies and about five percent or less is related to law enforcement emergencies. Gudmestad Dec. (docket no. 45), para. 7; Plaintiffs' Motion (docket no. 30), at 8–9. Because the Court finds that King County's paramedics do not meet either prong of the "substantially related test", they may not be treated as fire protection or law enforcement employees, and thus they do not ·qualify for the FLSA section 7(k) exemption to the FLSA 40–hour workweek provisions. Accordingly, plaintiffs' motion for partial summary judgment is GRANTED, and defendant's cross-motion for summary judgment on this issue is DENIED.

## B. KING COUNTY'S IMMUNITY FROM LIABILITY.

### 1. *Absolute Immunity.*

█ Title 29 U.S.C. § 216(b) of the FLSA provides in part:

> [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages.... The court in such action [as authorized by this provision] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action.

Notwithstanding this provision, section 259 of the Portal–to–Portal Pay Act grants an employer absolute immunity from paying unpaid overtime compensation, liquidated damages, court costs and attorney's fees for FLSA violations if the employer acts in conformity with and reliance upon written rulings of the Administrator of DOL's Wage and Hour Division.[6] Section 259 was designed to protect employers from liability if they took certain actions in reliance on a government agency's interpretation of the law which later turned out to be wrong. *EEOC v. Home Ins. Co.*, 672 F.2d 252, 263 (2d Cir.1982). For King County to qualify for complete immunity under section 259, the County must show that its actions (1) were taken in reliance on regulations or a written ruling of the Wage and Hour Administrator; (2) were in conformity with that ruling; and (3) were in good faith. *Home Ins. Co.*, 672 F.2d at 263.

Good faith is defined by the regulations as requiring that "the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry." 29 C.F.R. § 790.15. However, both the Second and Eleventh Circuits have ruled that the requirement of good faith in section 259 "is not a requirement of a showing of general good faith." *Home Ins. Co.*, 672 F.2d at 265; *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 926 (11th Cir.1987). Rather, "the Portal Act language, 'in good faith in conformity with,' precisely links the question of good faith to an act in conformity, and if there is no conformity, general good faith in other

---

**6.** 29 U.S.C. § 259(a) provides that:

[N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay ... overtime compensation under the Fair Labor Standards Act of 1938 ... if he pleads and proves that the act or omission complained of was *in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval or interpretation of [the Administrator* of the Wage and Hour Division of the Department of Labor] ..., or any ad-

ministrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect. (Emphasis added.)

respects cannot save the day." *Home Ins. Co.*, 672 F.2d at 265.

In order for the County to be successful on its good faith defense under section 259, the County must show that the DOL letter rulings on which it relied provided a clear answer to its *particular* situation. *Cole*, 824 F.2d at 927–28. The County has failed to meet its burden. The October 9 DOL letter ruling, on which King County relies most heavily, was written in response to an inquiry by an employer of EMTs who are, at times, required to actually extricate persons from vehicles ("[a]s stated in the material enclosed with your inquiry, the 'EMT will have to use whatever means are available to gain access to the patient and disentangle him from the wreckage ...' "). DOL's letter concerns paramedics who may not be trained in certain firefighting rescue techniques, but could and occasionally would be first responders at the scene of, for example, an automobile accident and thus would be required to perform those rescue duties unrelated to fires that firefighters often perform. By contrast, King County's EMSD paramedics will never be first responders and are subject to discipline if they perform rescue duties as defined in the DOL letter. Thus, DOL's October 9 letter ruling does not provide a clear answer to King County's particular situation. The Court therefore concludes that King County cannot avail itself of the section 259 absolute immunity defense to its FLSA violations and King County's motion for summary judgment on this issue is DENIED.

### 2. Immunity from Liquidated Damages.

■ The language of 29 U.S.C. § 216(b), stating that violators of section 207 of the FLSA "shall be liable" for liquidated damages, is mandatory. *Brock v. Shirk*, 833 F.2d 1326, 1329 (9th Cir.1987) (per curiam), *vacated on other grounds sub nom. Shirk v. McLaughlin*, 488 U.S. 806, 109 S.Ct. 38, 102 L.Ed.2d 18 (1988). However, the harshness of section 216(b) is mitigated by section 260 of the Portal–to–Portal Pay Act which allows the court, in its sound discretion, to refuse to award liquidated damages.

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act ... the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. The district court may deny liquidated damages.

> *if, and only if,* the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act.... [B]efore the district court's discretion may be invoked, the employer has the plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.

*Brock*, 833 F.2d at 1330 (quoting *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir.1982) (emphasis in original) (citations and footnote omitted)). Thus, to meet its statutory burden under section 260, King County must demonstrate that (1) the act giving rise to the violation was in good faith and (2) the County had reasonable grounds to believe that its act was not a violation of the FLSA. The good faith part of the test is subjective while the reasonableness part is objective. *Brock*, 833 F.2d at 1330. King County's conduct satisfies both components of the test.

To satisfy the subjective good faith component, King County is obligated to prove that it had an honest intention to ascertain what the FLSA requires and to act in accordance with it. *Id.* Good faith in section 260 requires some duty to investigate potential liability under the FLSA. "An employer cannot claim good faith who blindly operates without making an investigation as to its responsibilities under the law."

*Dalheim v. KDFW–TV*, 712 F.Supp. 533, 539 (N.D.Tex.1989).

In this case, King County made diligent efforts to ascertain the impact of the FLSA on its EMSD paramedics and to act accordingly. The County reviewed the relevant DOL regulations and the three DOL letter rulings interpreting FLSA section 207, consulted with the King County Prosecuting Attorney's Office, met with representatives from DOL, and attended seminars regarding the applicability of the FLSA overtime provisions to municipalities. King County did not blindly determine that its EMSD paramedics were exempt from the 40–hour workweek, *see* Blackstone, Ross, and Smolen Affs. (docket nos. 39–41), and there is no evidence suggesting that King County should have known that its paramedics were not exempt. Consequently, the Court concludes that King County has demonstrated that it had honesty of intention and no knowledge of circumstances that ought to have put the County on notice that it was violating the FLSA.

To satisfy the objective component of the statutory test, King County must prove that its failure to obey the statute was predicated upon such reasonable grounds that it would be unfair to impose on it more than a compensatory verdict. *Brock*, 833 F.2d at 1330. The Court determines that King County had objectively reasonable grounds for believing it was not violating the FLSA for the following reasons: First, King County sought and acted on advice from its counsel, the King County Prosecutor's Office. The King County Personnel Division consulted with the Prosecutor's Office for advice on the application of the FLSA to King County's paramedics, and after researching the question, both the Personnel Division and the Prosecuting Attorney's Office concluded that the paramedics should be classified as ambulance and rescue service employees under section 7(k). Ross Aff. (docket no. 40), at 1–2. The fact that an employer acts on advice of counsel may provide one reason to deny liquidated damages. *See Dalheim*, 712 F.Supp. at 540 (and cases cited therein.) Second, the 1986 DOL investigation concluded that King County's EMSD paramedics were properly classified as rescue service employees engaged in fire protection activities. *See* Blackstone Aff. (docket no. 39), at 5. King County reasonably continued to classify its EMSD paramedics as rescue service employees entitled to the section 7(k) exemption based on the outcome of this investigation. *See Dalheim*, 712 F.Supp. at 540. Third, the issue presented was one of first impression, where the statute and regulations are uncertain and confusing. There is no clear legal precedent that would have advised King County that it was violating the FLSA. King County's conduct was objectively reasonable in light of the uncertainty of the law. *See id.*

This Court therefore concludes that King County has met its burden of demonstrating that it reasonably and in good faith believed it was not violating the FLSA. Consequently, this Court, in its discretion, denies an award of liquidated damages to the plaintiffs. Defendant's motion for summary judgment is GRANTED as to its immunity from liquidated damages.

## CONCLUSION

For all the foregoing reasons, plaintiffs' motion for partial summary judgment is GRANTED as follows: King County's EMSD paramedics may not be treated as fire protection or law enforcement employees within the section 7(k) exemption to the FLSA 40–hour workweek provisions, and accordingly, plaintiffs are awarded unpaid overtime, court costs and reasonable attorney's fees under 29 U.S.C. § 216(b). Defendant's motion for summary judgment is GRANTED IN PART as to King County's immunity from liquidated damages only, and DENIED IN PART as to the remainder. The Court also GRANTS the parties sixty (60) days to explore settlement possibilities regarding damages. The parties are to provide the Court with a written status report within sixty (60) days of this Order concerning possible settlement.

IT IS SO ORDERED.